JOSEPH CALLAHAN, BY HIS NEXT FRIEND WILLIAM CALLAHAN, Respondent, *v.* LOUIS CAFFARATA, Appellant.

1. *Action—Malicious Prosecution—Evidence.*—In an action for malicious prosecution, the jury are authorized to infer the existence of malice from the want of proof of probable cause for the prosecution.

2. *Practice—New Trial.*—A motion for a new trial upon the ground of newly discovered evidence must show that the party has used due diligence to procure the evidence desired, and that it is not merely cumulative.

*Appeal from St. Louis Court of Common Pleas.*

The facts are sufficiently stated in the opinion.

At the instance of plaintiff the court gave the following instructions, to which defendant duly excepted :

1. The jury are instructed that if they believe from the evidence that the arrest and imprisonment of plaintiff was without probable cause, then the jury are at liberty to infer that it was malicious.

2. The jury are instructed that there are two kinds of malice—malice in fact, and malice in law : the former, in common acceptation, means ill-will against a person ; the latter is a wrong act against a person done intentionally. If, therefore, the jury believe from the evidence that defendant Caffarata was moved by ill-will against the plaintiff, or that the imprisonment of plaintiff was wrongfully and intentionally caused by him, they ought as against him to find that the imprisonment was malicious.

3. The jury are instructed that unless they believe from the evidence, that, at the time of the arrest and imprisonment of plaintiff upon the offence charged, there was a reasonable ground of suspicion of his guilt and supported by circumstances sufficiently strong in themselves to warrant a prudent man in the belief that plaintiff was guilty of the crime for which he was imprisoned, then there existed no probable cause for his arrest, and the jury will find accordingly.

4. If the jury find for the plaintiff, he will be entitled to recover such damages as the jury shall believe from the evi-

Callahan v. Caffarata.

dence that he suffered from his arrest and imprisonment; and the jury may add such further sum, by way of smart money, as in their opinion will sufficiently punish the defendant Caffarata for the wrong and injury done to plaintiff.

To the giving of these instructions appellant at the time duly objected and excepted.

The only instructions given on the part of appellant by the court were these:

1. If the jury find from the evidence that after the defendant Caffarata made the communication to the police officers, spoken of by the witness, concerning the loss of his jewelry, and after he had offered a reward for the recovery of his property, as stated by the witnesses, the police officers, or one of them, ordered or made the arrest of the plaintiff, and imprisoned him, without any request or direction of the defendant Caffarata so to do, then he is not liable in this action and the jury should find for him.

2. If the jury find from the evidence that Joseph Callahan was arrested and confined in the calaboose by the direction of the chief of police, or by the direction of one or more of the police officers, and that the said arrest and confinement of Callahan was not caused or procured by the defendant Caffarata, then the jury should find for Caffarata.

The following were the instructions asked by the appellant, which the court refused, and to which refusal the apellant at the time duly excepted:

1. The court instructs the jury that they should find for the defendant Caffarata, unless the jury find from the evidence that he and William Lee falsely and maliciously conspired together to have Joseph Callahan arrested, and that they did arrest, or cause him to be arrested, or imprisoned, on a charge of larceny.

2. The burden of proving the complaint against Caffarata stated in the petition rests on the plaintiff.

3. If the jury find from the evidence that the defendant Caffarata, in good faith and without malice or ill-will to-

wards Joseph Callahan, made the communications and statements to the police officer spoken of by the witnesses; and if the jury also find from the evidence that no complaint was made by Caffarata to obtain a writ of process for the arrest of Callahan; and if the jury further find from the evidence that officer Lee arrested Callahan without the authority of any judicial writ or process issued at the instance or by the procuration of Caffarata,—then the plaintiff cannot recover in this suit, and the jury should find for the defendant.

4. If the jury should find from the evidence that the defendant Caffarata in good faith made the communications and statements to the police officers, spoken of by witnesses, in respect to the loss or theft of his jewelry; or if the jury also find from the evidence that Caffarata, in all that he said to the police officers in answer to the inquiries or otherwise in respect to Joseph Callahan, acted from honest motives and without malice or ill-will towards him, then the jury should find for the defendant.

5. The jury are instructed that there was no legal obligation or duty resting on the police officers, or either of them, to arrest or imprison Joseph Callahan upon the communications and statements made to them by Caffarata in respect to the loss or theft of his jewelry. It was entirely optional with the police whether to make the arrest or not.

6. Although the jury may find from the evidence that the defendant Caffarata made the communications and statements to the police officers in respect to the theft or loss of his diamonds, and that he requested that Joseph Callahan should be arrested; yet if the jury find from the evidence that in making said communications and statements Caffarata acted in good faith and without malice or ill-will towards Joseph Callahan, the jury should find for the defendant Caffarata.

All these instructions were refused, and appellant duly excepted.

The jury returned a verdict against Caffarata for $1,000

(the suit having been dismissed by plaintiff as to defendant Lee).

*Krum & Decker*, for appellant.

I. There was a fatal variance between the proof and the allegations of the petition.

The defendant was sued for conspiring with defendant Lee to arrest and imprison the plaintiff; this is the allegation of the petition. This was denied; the proof failed to show such conspiracy.

By the first instruction tendered by appellant, he asks that unless this issue was proven the jury must find for defendant. The plaintiff cannot state one cause of action and then recover on another; this rule has been constantly enforced by this court.—Dieckman v. McCormick, 24 Mo. 596; Link v. Vaughan, 17 Mo. 585; Beck v. Ferara, 19 Mo. 30; Duncan v. Fisher, 18 Mo. 403; Gregg v. Robbins, 28 Mo. 347; Harris v. Hann. & St. Jo. R.R. Co., 37 Mo. 308.

The injustice of allowing such a course of practice is very apparent; it takes a party by surprise. He is charged with one thing, and, being ready to disprove, plaintiff recovers on another. The party must be held to prove his cause of action as he alleges it, or else all written pleadings should be abolished.

II. Malice as well as want of probable cause is necessary to sustain the action.

Malice is a question of fact to be found by the jury. It may be inferred from a want of probable cause, but the jury must find there was malice in fact. The doctrine of "malice in law," given by the court to the jury, has no application to this case, because there was no prosecution immediately instituted by defendant. In an action where the prosecution is not instituted immediately, defendant must prove actual malice, and not merely the want of probable cause, to infer malice in law—Bulkly v. Smith, 2 Duer, 265; Mitchell v. Jenkins, 5 B. & A. 595; Miller v. Brown, 3 Mo.

127; Frissel v. Relfe, 9 Mo. 851 ; Riney v. Vallandigham, 9 Mo. 807; Brant v. Higgins, 10 Mo. 728.

*Garesché & Mead,* and *R. S. McDonald,* for respondent.

I. Malice is a question of fact to be left to the jury, and hence the court in its instructions for the plaintiff committed no error—Frissel v. Relfe, 9 Mo. 859.

II. That the arrest was without warrant, only made it more illegal ; but it does not excuse defendant—Miller v. Brown, 3 Mo. 127.

III. The motion for a new trial was properly overruled ; the "ground of surprise" was a futile reason.

Because it showed no diligence—State to use, &c., v. Wightman et al., 27 Mo. 121; Peers v. Davis, 29 Mo. 184 ; O'Connor v. Duff, 30 Mo. 595 ; Barry v. Blumenthal, 32 Mo. 29 ; Richardson et al. v. Farmer, 36 Mo. 35 ; Howell's Ex'r v. Howell, 37 Mo. 124.

Because the testimony was not applicable to the issue, and could have been procured on a former trial with a reasonable diligence—Goff v. Mulholland, 33 Mo. 203.

Because immaterial, and would not have changed the result—State v. Locke, 26 Mo. 603.

IV. The petition is sufficient—R. C. 1855, p. 1229, 2d s. d. of § 3 ; id. p. 1239, § 51.

V. The motion in arrest was properly overruled—R. C. 1855, p. 1255, § 19, s. d. 5, 8 & 9 ; Frazer v. Roberts, 32 Mo. 457 ; Shaler v. Van Wormer, 33 Mo. 386 ; R. C. 1855, p. 1300, § 34.

Fagg, Judge, delivered the opinion of the court.

The respondent instituted his suit in the St. Louis Court of Common Pleas against the appellant together with one William Lee, for damages for falsely and maliciously conspiring together to have the plaintiff Joseph·Callahan arrested for larceny, and for arresting and imprisoning him upon said charge. There was an answer filed by the appellant Caffarata containing a specific denial of all the allegations in

Callahan v. Caffarata.

the petition, and, the suit being dismissed as to Lee, the trial was had upon the issues thus presented, which resulted in a verdict for the plaintiff. A motion for a new trial as well as in arrest of judgment being overruled, the case is brought here by appeal.

It is contended on behalf of the appellant: 1. That there was a variance between the proof and the allegations of the petition which was fatal to the plaintiff's right of recovery. We do not think so. The petition may be said, in general terms, to be rather loosely drawn; but there is, nevertheless, a substantial averment of a cause of action corresponding with the character of the testimony introduced upon the trial and sufficient to support the verdict and judgment. There being only two witnesses, the evidence is embraced in a small compass, and presents no complications whatever as to the facts proved. It is shown that defendant had been robbed of some valuable jewelry, and, for the purpose of recovering his property and procuring the arrest of the thief, he went to the police officers of the city upon several occasions, and disclosed not only the facts and circumstances connected with his loss, but also the fact that he suspected Joe, the respondent.

The first witness, Lee, states that he made the arrest by direction of Capt. John Eagan, of the city police, who came to him in company with the defendant, and who stated at the time that Caffarata would go with him and "point out the man." They proceeded to the saloon kept by the defendant, and in which the plaintiff acted as "bar-keeper." He states that he had a conversation with defendant on the way to the saloon "about the loss of his diamonds. The substance of the conversation, as well as I recollect it, was that he suspected Joe (meaning the plaintiff) of taking the diamonds, and this was why he was arrested." Up to this time it is not shown that this witness had any knowledge of the transaction whatever.

The next witness was Capt. John Eagan, who was present with the chief of police at the time information was given at

the office of the loss of the property, and who had various in-
terviews with the defendant up to the time of the arrest of
plaintiff. Plaintiff was arrested by officer Lee without pro-
cess, and in his examination in chief this witness says, in
answer to the question, "Why and how was the plaintiff
Callahan arrested?"—"By consent and order of Mr. Caffa-
rata." And again, in answer to the question, "What led
you, in this conversation which preceded the arrest, to single
out Joe (the plaintiff) as the party to be arrested?" he says,
"I did not single him out; Mr. Caffarata did."

In the course of a lengthy and searching cross-examination
the same statement is substantially repeated several times,
giving the time, place and circumstances of the order, and
the language in which it was given.

In addition to this, the plaintiff introduced testimony to
prove that "he was confined in the calaboose two days, and
let go," &c. Upon the pleadings and facts proved in the
case, the first question for the consideration of the jury was
whether, as a matter of fact, plaintiff was arrested and impris-
oned by the order and consent of defendant, or was it a vol-
untary act of the police officer upon the information given
by the defendant. If this question was fairly presented by
the instructions given and that fact found against the defend-
ant, together with the other facts necessary to constitute a
cause of action, there exist no grounds of complaint, and the
defendant must abide the award of the jury.

It would extend this opinion to an unreasonable length to
examine in detail all of the instructions given both for plain-
tiff and defendant, as well as those asked by defendant and
refused by the court; they will, therefore, be very briefly
noticed.

Plaintiff's first instruction simply leaves the jury to infer
malice from the proof of want of probable cause, and is
therefore correct.

The second defines the difference between malice in fact
and malice in law, leaving the jury to infer that the arrest
and imprisonment of plaintiff was malicious, if they should

further find that it was wrongfully and intentionally caused by defendant. This presents no ground of objection.

The third very properly tells the jury what is probable cause, leaving the facts necessary to be proved to be found by them.

The fourth fixes the measure of damages, and is not objectionable.

The two instructions given on the part of the defendant presented the real question of fact to be determined in as favorable light as possible for the defendant. The other instructions asked and refused were manifestly erroneous, except the one in reference to the burden of proof; but the *onus* is so clearly stated in the instructions given that this may be very well treated as superfluous, and therefore its refusal was not improper.

As to the instructions refused, it may be said that the first had reference to an issue not presented to the jury at all. There was no question about a false and malicious conspiracy. The petition had been dismissed as to Lee, and the remaining issue was as before stated, whether the arrest and imprisonment of the plaintiff was made or procured by the defendant without a reasonable or probable cause. The next is framed upon the theory that if the communications to the police officers were made by Caffarata in good faith, there could be no cause of action against him, unless it appeared that the arrest of the plaintiff was made by the authority of process duly issued upon a complaint made by him. In the case of Rohan v. Savin, 5 Cush. 281, the question as to the authority of an officer, or of private persons under proper limitations, to arrest without warrant persons who have committed felonies, was fully discussed and decided. It was held in that case that "the public safety and the due apprehension of criminals, charged with heinous offences, imperiously require that such arrests should be made without warrant by officers of the law. As to the right appertaining to private individuals to arrest without a warrant, it is a much more restricted authority, and is confined to

cases of the actual guilt of the parties arrested, and the arrest can only be justified by proving such guilt." The only difference between officers of the law and private individuals is that the former are clothed with greater authority, and may justify their act by showing that there was " probable and reasonable grounds for believing the party guilty of a felony," whilst the latter " can only be justified by proving such guilt." The instruction was properly refused.

The other instructions are particularly defective in not stating the whole case. Malice is but one of the ingredients necessary to constitute a cause of action of this character. The want of probable cause is another which must be affirmatively proved, and when so proved is a fact from which the jury are at liberty to infer malice. Therefore it was manifestly wrong to say to the jury, that if the defendant acted in good faith and from honest motives in all his intercourse with the police in reference to this matter, they should find for him.

The remaining question is in reference to the motion for a new trial upon the ground of newly discovered testimony. As it seems not to have been insisted upon in the argument and brief of the appellant, it may be inferred that it is not relied upon as a ground of reversal. The affidavit filed in support of the motion contains a single fact as to a statement made by officer Eagan previous to the arrest of the plaintiff. It was that "he (Eagan) believed or was satisfied that Joe (meaning the plaintiff) had stolen the diamonds, and that he (Eagan) intended to arrest him," &c. It has been repeatedly said that applications for new trials upon the ground of newly discovered testimony, are entertained by the courts with great reluctance. There is such a degree of suspicion attaching itself to these motions as a general rule, that great caution ought to be exercised in acting upon them. In addition, to the question of its materiality, and whether there is a probability of the party being benefitted by a rehearing of the cause, all the attending facts and circumstances should be looked into with great care. When the trial is ended it

is easy to see what the defects in the proof are, and the temptation to supply them may be strong enough to induce the defeated party to make an effort to do so.

In this case it is worthy of note that Anderson, the person who is relied upon to prove the fact discovered after the trial, was the only person to whom the defendant had ever shown the diamonds, except the two bar-keepers in his saloon; that Anderson seems to have had information of the robbery, and during the time that the police officers were engaged in looking for the property and the thief, it is not shown that he was out of the city of St. Louis. He shows by his affidavit that he not only knew the fact that the theft had been committed, but knew the time that plaintiff was arrested; and that a "day or two before the plaintiff was arrested" he had the interview with Eagan, in which the admission was made by him as before stated. It is very strange indeed, to say the least of it, that the defendant seems to have made no effort to ascertain what he could prove by this party, when his connection with the whole transaction was such as to raise a presumption that he knew something about it. But it is difficult to see how it could have benefitted the defendant materially even if the fact had been proved upon the trial. It is not so inconsistent with the statement of Eagan in reference to the part which the defendant acted in procuring the arrest of the plaintiff as to destroy the effect of his testimony.

The other judges concurring, the judgment of the court below will be affirmed.