Waddell v. Krause.

---

## FORREST LEE WADDELL, Respondent, v. ERNEST KRAUSE, JR., Appellant.

St. Louis Court of Appeals. Opinion Filed May 2, 1922.

1. **MALICIOUS PROSECUTION**: Demurrer to Evidence: Evidence Reviewed: Case for the Jury. In an action for malicious prosecution, viewing plaintiff's evidence from a demurrer filed at the close of the whole case, *held* there was a sufficient recital of the evidence in the record from which, with the reasonable inferences deducible therefrom, the trial court was warranted in submitting the case to the jury. .

2. ———: Probable Cause: Question for the Jury. In an action for malicious prosecution based on a charge of selling a mortgaged automobile, whether the circumstances in evidence, though conflicting, showed the lack of probable cause was a question of fact to be found by the jury.

3. ———: Malice: Defined. Malice in law is defined as a wrongful act done intentionally without legal justification or excuse, and it was error in defining malice in law in an instruction to omit the words "without legal justification or excuse."

4. ———: Instructions: Erroneously Defining Malice: Harmless in View of Other Instructions. In an action for malicious prosecution, an instruction erroneously defining malice in law as a "wrong act against a person—done intentionally," omitting the words "without legal justification or excuse," held not to constitute reversible error in view of all the other instructions given.

5. ———: **Elements: Malice and Want of Probable Cause.**  While malice is the root of the action of malicious prosecution, it is not the only necessary ingredient or element; there must be a want of probable cause for the institution of such original proceedings shown, and it must be shown that there was a concurrence of malice and want of probable cause.

6. ———: **Evidence: Want of Probable Cause: Malice.**  Proof of malice does not establish the want of probable cause, and likewise the proof of a want of probable cause does not necessarily establish the existence of malice, such is evidence of malice for the consideration of the jury.

7. ———: ———: **Malice: May be Inferred from Facts Which go to Establish Want of Probable Cause.**  Malice need not be proved by direct testimony; it may be inferred from the facts which go to establish the want of probable cause.

Appeal from the Circuit Court of St. Louis County.— *Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*James M. Breckenridge* and *William E. Garvin* for appellant.

(1)   Incompetent and illegal evidence was permitted to be introduced by plaintiff, over defendant's objection and exception.  (a)  Frazier's alleged telephone conversation on its face concerned an oral release by one who was not at the time owner of the secured notes and mortgage; being neither legal or credible, it was irrelevant and immaterial, and should have been stricken out.  De Witt v. Syfon, 202 Mo. App. 469.  (2)  Declarations of agents are not admissible unless they constitute a part of the *res gestae,* and they cannot be received unless they are contemporaneous with the acts they illustrate and of which they form a part.  And it was reversible error to admit testimony of conversations of Korn (defendant's alleged agent) the day after said information was filed and warrant issued, respecting Korn's previous actions in the matter.  Fore v. Rodgers,

— Mo. App. —, 216 S. W. 566; 1 Gr. on Ev. (Redfield Ed.), secs. 113, 114. Also because said conversation occurred, if at all, when neither defendant was present, and was all hearsay. Bonslett v. Ins. Co., — Mo. —, 190 S. W. 870. (3) Defendant's demurrers to the evidence should have been sustained and instructions of nonsuit given. Wilkinson v. Mcgee, 265 Mo. 574; Vladar v. Klopman (N. J.), 99 Atl. 330; Peterman v. P. & F. Lumber Co., 128 La. 708; Hanna v. Ins. Co., 241 Mo. 383; Scott. v. Dewey, 23 Pa. Sup. Ct. 396. (4) Instruction No. 1 is erroneous because it directs the jury to find for plaintiff if the jury merely finds as facts that defendant "maliciously and without probable cause procured or caused one Walter Korn to prosecute" and "that said Justice of the Peace discharged the plaintiff." (a) There is no legal evidence that defendant procured or caused Korn to prosecute. (b) The presumption arising from discharge by the magistrate, having been contravailed by other evidence, including undisputed acts and statements of plaintiff justifying reasonable belief in plaintiff's guilt of the offense charged, said instruction was misleading and illegal. De Witt v. Syfon, 202 Mo. App. 469. (5) Instruction No. 2 omits the necessary element of just cause or excuse and is erroneous and misleading. Webb v. Byrd, — Mo. App. —, 219 S. W. 683; De Witt v. Syfon, — Mo. App. —, 211 S. W. 716; State ex rel. v. Trimble, — Mo. —, 232 S. W. 100; Murdock v. Dunham, — Mo. App. —, 206 S. W. 916; Atkins v. Brown, — Mo. App. —, 208 S. W. 502. (6) Instruction No. 4 is erroneous, being (1) contrary to the settled law of this State as to what constitutes probable cause. State ex rel. v. Trimble, — Mo. —, 232 S. W. 100, and cases cited. (2) And is confusing and misleading on the vital element of reasonable belief in plaintiff's guilt, irrespective of actual guilt. Cote v. Gillette et al., — Mo. App. —, 186 S. W. 538; Wilkinson v. McGee, 265 Mo. 574. (7) The instructions given are conflicting, inconsistent and repugnant.

*Jos. T. Davis* and *E. H. Wayman* for respondent.

(1) The appeal should be affirmed or dismissed upon the ground that the so designated "Abstract of Record," is in effect no abstract of record, and is so garbled, misleading and incomplete as to be no abstract upon which this court can determine the issues herein presented. Sec. 1479, R. S. 1919; Rules of St. Louis Court of Appeals; Cravens v. Milling Co., 228 S. W. 515; Brand v. Cannon, 118 Mo. 595; Gooden v. M. W. of A., 189 S. W. 398; Huff v. Doerr, 228 S. W. 852. (2) The testimony referred to under points 1 and 2 of appellant's brief is competent for the purposes offered. (3) Defendant's demurrer to evidence was properly overruled. (a) The Court of Appeals will not disturb the action of the lower court on the question of overruling demurrer to the evidence upon an incomplete and garbled abstract of the record. Cravens v. Milling Co., 228 S. W. 515; Sec. 1479, R. S. 1919; Rules of St. Louis Court of Appeals; Brand v. Cannon, 118 Mo. 595; City of Laddonia v. Day, 178 S. W. 741; Gooden v. M. W. of A., 189 S. W. 398; Huff v. Doerr, 228 S. W. 852. (b) In passing upon a demurrer to the evidence the court must consider the evidence to be true, and in so doing draw every inference in its favor that the law will warrant. Hauser v. Bieber, 271 Mo. 335. (c) The evidence adduced by plaintiff was sufficient (even taken from the incomplete and garbled abstract) to warrant the court in overruling the demurrer to the evidence. Hauser v. Bieber, supra; Brant v. Higgins, 10 Mo. 728; Williams v. VanMeter, 8 Mo. 342; 18 Ruling Case Law, sec. 20, p. 36; Stewart v. Sonneborn, 98 U. S. 187; Lalor v. Byrne, 51 Mo. App. 578. (4) Instruction No. 1 correctly hypothesizes the facts and is based upon substantial testimony in the record to justify it. (5) Instruction No. 2 was designed for no purpose other than to define malice, and is a correct statement of the law. Callahan v. Cafferata, 39 Mo. 136, l. c. 143. (6) Instruction No. 4 is a correct statement of the law as to probable cause. Fugate v. Miller, 109 Mo., 286;

Stubbs v. Mulholland, 168 Mo. 47; Webb v. Byrd, 203 Mo. App. 589.

DAUES. J.—This is an action for malicious prosecution; the petition prays for the recovery of actual damages in the sum of $25,000, and punitive or exemplary damages in the sum of $25,000. The answer is a general denial. The trial before the court and a jury resulted in a verdict and judgment for plaintiff in the sum of $1,000 as actual damages, and $500 as punitive damages, from which defendant appeals.

About February 2, 1917, plaintiff purchased a Ford automobile from the Krause Motor Corporation at Webster Groves, Missouri. This car is identified by its factory number, to-wit No. 1559447. Plaintiff paid part cash, the remainder being borrowed from the Motor Time Sales Company, which company makes a business of financing time-payment sales of automobiles. For the amount so borrowed plaintiff executed a chattel mortgage in favor of that company, the payments being spread over monthly installments. The mortgage, it appears, was later endorsed by the Motor Time Sales Company and deposited with the City Trust Company in the City of St. Louis, Missouri, as collateral for loans made by the Motor Time Sales Company.

This automobile was later sold for cash by plaintiff to the Hercules Body Corporation. With the proceeds thus received, he bought from the same Krause Motor Corporation a second Ford automobile, which was not covered by a chattel mortgage. This second automobile was again sold, and a third purchased from the same source and paid for by plaintiff, and this car was also unencumbered by mortgage. The original chattel mortgage and the notes thereunder were being paid off and cancelled as the monthly installments became due on the 2nd of each month. The last two notes, falling due on January 2 and February 2, 1918, were taken up on December 3, 1917, by plaintiff before maturity. The last automobile above mentioned was sold by plaintiff, who

was also personally selling Ford automobiles, to one Walter Korn. This transaction took place November 26, 1917. Plaintiff testified that he told defendant that he was going to sell the first, or mortgaged car, and that defendant told him to go ahead, saying, "We will be able to give you a new car," and that he therefore did not say anything about the mortgage to defendant because there was no mortgage on the second and succeeding cars.

On cross examination, plaintiff said that after his arrest, but on the same day, December 3, 1917, and before the preliminary hearing on December 5, 1917, he paid the two remaining installments then not yet due, to the City Trust Company; that defendant would ask plaintiff occasionally how he was getting along with the payments on his car, and that plaintiff would say he had a few more payments to make. Plaintiff emphatically denied ever having told defendant that he had a mortgage on any car subsequent to the first car. The following questions and answer appear in his cross examination:

"Q. Let me ask you this question: After you bought this third car that you sold to Korn, didn't you say to Mr. Krause, 'Mr. Krause, I want to meet an installment on my mortgage on this car?' A. No, sir; not this car.

"Q. What was it you said? A. I said I want some money to meet my notes.

"Q. Meet your notes? A. I never once said I want money to meet this car."

On further cross examination, plaintiff was asked whether defendant was not under the impression that the last-owned car was mortgaged, to which plaintiff answered: "Well, that was up to him."

On December 1, 1917, which was Saturday, plaintiff went into the office of the Krause Motor Corporation, for which corporation he was also selling cars, and was there questioned by defendant, who was the president of the Krause Motor Corporation, about his failure to sell any automobiles for the company during that week. Plain-

tiff explained that he was doing his best, but that he was unable to make much headway because he had no machine and was under handicap to get about. Krause and plaintiff discussed the matter of getting another machine for plaintiff to use out of the stock of the company. On the Sunday following, December 2, 1917, the defendant drove to the farm of Walter Korn, and there saw the Ford machine which plaintiff had sold Korn on November 26, 1917. Defendant asked Korn whether plaintiff had told him that this automobile was covered by a chattel mortgage. When informed that he had not, but that plaintiff told him the car was "all O. K.," defendant told Korn that he would take care of the situation, and in his own automobile conveyed Korn to Webster Groves to the office of the Justice of the Peace. It being Sunday, the Justice was attending church. He was called by an usher and introduced to Korn by defendant. Defendant told the magistrate that Korn wanted a warrant for a man who had sold him a mortgaged automobile. When the Justice asked the name of the accused, the defendant told him the warrant was asked for Forrest Waddell, the plaintiff herein. A warrant was prepared and sworn out against the plaintiff. There is evidence tending to show that the defendant was active in furnishing the information and was taking a very considerable interest in the prosecution. The plaintiff was arrested the next day by the constable on the warrant issued, the arrest taking place in the office of the Krause Motor Corporation, in the presence of the defendant, who, when he saw the arrest consummated, said, according to plaintiff: "We know what kind of trouble you are in. It is a federal penitentiary offense and I hope you will go there." Plaintiff was incarcerated in the jail at Webster Groves, where he remained for several hours until a bail bond was approved. The charge against plaintiff was a felony, the automobile being valued at more than $50. This prosecution was bottomed upon section 4570, Revised Statutes 1909, now section 3348, Revised Statutes 1919.

At the trial it was readily disclosed that the automobile was sold by plaintiff to Korn free from any mortgage. It should be said that the chattel mortgage given on the first car was properly recorded in the office of the Recorder of Deeds for St. Louis County, and contained a proper description of the car therein affected.

There was evidence that before defendant went to the farm of Korn on Sunday, he, Krause, had communicated with the mortgagee of the first car referred to, and had informed the manager of the Motor Time Sales Company that plaintiff had sold the mortgaged car and that defendant was told by the manager of that company that his company "had had a mortgage on Waddell's car," but that they had released Waddell under that mortgage, and were not concerned about the matter.

The defendant testified that by reason of conversations had with plaintiff he was led to believe that each time plaintiff sold an automobile he would transfer the mortgage to such succeeding automobile as he purchased same, and being informed by plaintiff that he was still paying the notes, he was led to believe that the automobile sold to Korn was under mortgage, and that he in fact was told by plaintiff that this automobile was mortgaged, which, as stated above, the plaintiff denied.

Korn was produced as a witness by the defendant, and testified, in effect, that he made affidavit to the complaint without persuasion from the defendant. The testimony of this witness is very indefinite. There was evidence in rebuttal by plaintiff, introduced for the purpose of and tending to affect the credibility of this witness.

The trial court sustained a demurrer to the evidence as to the Krause Motor Corporation, which was joined as a defendant below, but overruled same as to defendant E. J. Krause, Jr. We are discussing the case, therefore, without reference to defendant Krause Motor Corporation.

At the outset we are confronted with respondent's motion to affirm the judgment, which asks for an af-

firmance of the judgment upon fourteen grounds, all of which, however, are to the effect that appellant's abstract of the record is "so incomplete, so misleading, and so intermingled with comments, conclusions and arguments of counsel for appellant that respondent is and has been unable to prepare a reply to appellant's briefs herein filed, and that this court cannot fully adjudge and determine the issues herein presented."

While this motion would not lie for reasons not necessary here to discuss, we are, however, of the view that the abstract of the record, is sufficient to present the questions raised on this appeal.

We are asked to reverse the judgment for error on the part of the lower court in refusing a demurrer to the evidence at the close of plaintiff's evidence, and again at the close of the whole case. We therefore view the evidence from the last demurrer. There is a sufficient recital of the evidence in the record from which, with the reasonable inferences deducible therefrom, we have no difficulty in concluding that the court was amply warranted in submitting the case to the jury. [Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68.]

It is defendant's insistence that the court should have held at the close of the evidence, as a matter of law, that there was probable cause for the prosecution. The fact that the automobile sold to Korn was not mortgaged, and that plaintiff was discharged by the Justice, is not disputed, and there were other facts and circumstances introduced by plaintiff tending to show a lack of probable cause for the prosecution. Whether the circumstances in evidence, though conflicting, showed the lack of probable cause was a question of fact to be found by the jury. [Hanser v. Bieber, 271 Mo. l. c. 341-342, 197 S. W. 68.]

But it is strenuously insisted that the giving of plaintiff's instruction No. 2 constituted reversible error. This instruction sought to define the terms "malice in fact" and "malice in law," the latter being defined as "a wrong act against a person—done intentionally." The

definition, it will be seen, omits the words "without legal justification or excuse." Almost without exception, wherever defined in text, law dictionaries or decisions, malice in law is defined as "a wrongful act done intentionally without legal justification or excuse," or words of similar import.

The question before us, however, is whether this definition taken with the other instructions given in the case leaves such an infirmity in the record as to justify a reversal of the judgment.

We confess that at the outset we were strongly inclined to the view that instruction No. 2, as given, vitiated the judgment, but after much deliberation we have confidently reached the conclusion that such does not constitute reversible error in view of all the instructions given.

Plaintiff's instruction No. 1 required the finding of malice and a lack of probable cause before authorizing a recovery for plaintiff.

Instruction No. 3 was to the effect that if the jury found the prosecution to have been instituted by defendant without probable cause, then the jury was at liberty to infer malice.

In instruction No. 4 the term "probable cause" was correctly defined.

This question addresses itself to us: What would the omitted words "without legal justification or excuse" add to the instructions which is not already therein contained? The jury were required to find that the defendant instituted the prosecution without probable cause. We have earnestly sought to discover what legal justification or excuse might be present other than "probable cause" for the institution of the prosecution. In other words, what other legal justification or excuse would have justified or excused defendant if there was not probable cause to institute the prosecution? We confess we can conceive of none.

To maintain an action for malicious prosecution, the original proceedings complained of must have been

instituted "maliciously." While malice is the root of the action of malicious prosecution, it is not the only necessary ingredient or element; there must be a want of probable cause for the institution of such original proceedings shown. Therefore, in order to maintain this action, it must be shown that there was a concurrence of malice and want of probable cause. [18 Ruling Case Law, sec. 19; Wheeler v. Nesbit et al., 24 How. 544; Sharpe v. Johnston, 76 Mo. 660; Wilkinson v. McGee, 265 Mo. 574, 178 S. W. 471.]

The proof of malice does not establish the want of probable cause, and likewise the proof of a want of probable cause does not necessarily establish the existence of malice. Such is evidence of malice for the consideration of the jury. Malice need not be proven by direct testimony; it may be inferred from the facts which go to establish the want of probable cause. [Sharpe v. Johnston, 76 Mo. 660, l. c. 669.]

Now, to make an act malicious, these elements must combine, to-wit, the act complained of must be wrongful and intentional, and must be committed without legal justification or excuse.

Instruction No. 1, for plaintiff, required the jury to find that the prosecution was instituted wilfully, maliciously and without probable cause. Instruction No. 3 told the jury that if the prosecution was begun without probable cause, the jury was at liberty to infer that it was malicious; and instruction No. 4 correctly defined what constituted probable cause. The jury by the instructions were required to find that the prosecution was wilful, wanton and malicious, and instituted without probable cause. By requiring the jury to find a want of probable cause, the wrongful act done intentionally was required to be found to be without just cause or excuse.

We entertain serious doubt as to whether the phrase "without legal justification or excuse" in itself as a part of the definition of legal malice would have sufficed unless the jury had been further instructed as to what constituted legal justification or excuse, or the absence

of same. Or, in other words, what constituted justification or excuse in law. In the instant case, the court did instruct the jury by other instructions what constituted justification or excuse in law.

While the reports are filled with cases in which malice in law has been defined, and almost without exception including the words in this instruction omitted, yet we do not find that our Supreme Court or other Appellate Courts have definitely decided that the absence of such phrase made the definition faulty, and certainly not under circumstances such as we have before us.

In the early case of Callahan v. Caffarata, 39 Mo. 136, a malicious prosecution case, an instruction similar to the one under discussion was held to be sufficient.

In State v. Wieners, 66 Mo. 13, l. c. 20, though not entirely in point, our Supreme Court, in discussing the words "without legal justification or excuse," in the definition of malice, said: "This definition is open to verbal criticism, for the intentional doing of a wrongful act is necessarily without just cause or excuse, for otherwise it would not be a wrongful act; so that those words are superfluous."

In McNamara v. St. Louis Transit Co., 182 Mo. 676, l. c. 683, 81 S. W. 880, the Supreme Court, in referring to the meaning of malice, said: "The term 'intentionally' done covers all that has ever been or ever could be claimed as necessary to indicate to the jury that the defendant knew that it was wrong, knew that he had no just cause or excuse for so doing, and hence did it wilfully, and wantonly and in reckless disregard of the rights of the other party."

In Webb v. Byrd, 203 Mo. App. 589, l. c. 600, 219 S. W. 683, l. c. 685, this court criticizes an instruction which defined malice omitting the words "without just cause or excuse." It will be observed, however, that the chief reason for condemning the instruction in that case was because the instruction permitted a verdict for plaintiff without requiring the jury to find malice on the part of the defendant.

The definition of malice in law as given by lexicographers and text writers, of course, is general and comprehensive in scope, and when so defined includes the words "without legal justification or excuse." When, however, the definition is applied to a given state of facts, or to a particular case, and the legal justification and excuse applicable to such case is properly defined and is required to be found to exist, then the requirements of the accepted definition of malice in law have been fully met. We therefore rule this point against appellant.

We have also examined the complaint that certain testimony adduced by plaintiff on rebuttal is immaterial and incompetent. By this testimony plaintiff sought to attack the credibility of the witness, Korn, who testified for the defendant, by showing that Korn had made statements contrary to his testimony. It is somewhat difficult, in view of the manner in which the abstract is prepared, to clearly outline the extent and effect of such testimony. However, from what we have before us, we are convinced that such testimony was admissible for the purpose mentioned.

Accordingly, the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Becker, J.,* concur.