## GLOBAL CONSTRUCTION, INC., d/b/a Global Construction of Florida, Inc., Appellant,

### v.

## MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent.

### No. WD 53160.

Missouri Court of Appeals, Western District.

Dec. 16, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.

Application to Transfer Denied April 21, 1998.

Paul T. Graham, Jefferson City, for Appellant.

Michael C. Rose, Jefferson City, for Respondent.

Before LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

Global Construction, Inc. ("Global") sued the Missouri Highway and Transportation Commission ("the Commission") for breach of a contract to repaint a bridge, alleging that the Commission wrongfully required Global to upgrade its method of containing airborne sandblasting residue. The trial court entered a summary judgment on behalf of the Commission, and Global now appeals, claiming that there is a genuine issue of material fact concerning the contract's containment standards.

Affirmed.

In the summer of 1992, the Commission solicited bids for a project which involved the sandblasting and repainting of a bridge on Southwest Trafficway in Kansas City, Missouri. Global submitted the lowest bid and, on July 10, 1992, entered into a contract with the Commission to make the proposed improvements. According to the express terms of the contract, Global agreed to "comply

with all federal and state laws and regulations and local ordinances." In addition, the contract provided that the work would be done in accordance with the Commission's 1990 Standard Specifications for Highway Construction, which were expressly made "part and parcel of this contract."

Section 107.1 of the Standard Specifications stated:

> **Laws to be Observed.** The contractor shall at all times observe and comply with all Federal and State laws, local laws, ordinances, orders, decrees, and regulations existing at the time of or enacted subsequent to the execution of the contract which in any manner affect the prosecution of the work.

At the times that the contract was bid, executed, and performed, the following state regulation was in effect:

> **10 CSR 10–6.170 Restriction of Particulate Matter to the Ambient Air Beyond the Premises of Origin**
>
> (1) Restrictions to Limit Fugitive Particulate Matter Emissions.
>
> (A) No person may cause or allow to occur any ... construction or use of a road, driveway or open area ... without applying reasonable measures as may be required to prevent, or in a manner which allows or may allow, fugitive particulate matter to go beyond the premises of origin in quantities that the particulate matter—
>
> 1. Remains visible in the ambient air beyond the property line of origin; or
>
> 2. May be found on surfaces beyond the property line of *origin.*

And, at the times that the contract was bid, executed, and performed, § 18.86(e)(2) of the Kansas City, Missouri, Code of General Ordinances was in effect:

> *(E) Preventing Fugitive Particulate Matter From Becoming Airborne:*
>
> *(2) Construction, use, repair, demolition:* No person may cause or permit ... a road, a driveway, or an open area to be constructed, used, repaired or demolished without applying all such reasonable measures as may be required to prevent fugitive particulate matter from becoming airborne so that it remains visible beyond the premises where it originates or that its presence may be found beyond the premises where it originates.

Global began work under the contract in October of 1992. The contract did not specify the method to be used to contain the particles emitted by the sandblasting, and Global used tarps as a containment device—a method which contained 85% of the emitted particles. In March of 1993, the City of Kansas City, Missouri, notified Global that dust emission from the sandblasting violated the City's air quality ordinance. On May 7, 1993, a Commission engineer ordered Global to stop work on the project because of the excessive dust emission. At a May 10, 1993, meeting attended by representatives from Global, the City, and the Commission, Global was instructed to change to a negative air pressure containment system—a method which contained 100% of the emitted particles. There is no evidence in the record that Global was ever found guilty of, or that Global ever pleaded guilty to, violating the ordinance.

The contract provided that, if Global felt that additional compensation was due for work not clearly covered in the contract, Global could file a claim for adjustment with the Commission. Global made such a claim, seeking additional compensation for the costs associated with the change of containment methods. The Commission denied Global's cost adjustment claim, and Global subsequently sued the Commission for breach of contract.

Global's petition for damages alleged that the contract did not contain any specifications for Global's debris containment operations, and that the Commission wrongfully required Global to upgrade its debris containment operations because the change constituted additional work which was not required by the contract. The petition sought $781,932.53 in damages for the cost of the increased debris containment operations, and $1,016,063.00 in damages from the delay to Global's other projects caused by the additional time and labor which needed to be applied to the debris containment operations.

The Commission filed a motion for summary judgment, claiming that Global could not, as a matter of law, recover under the theory of liability asserted in its petition. The Commission stated that "it is very difficult to ascertain plaintiff's liability theory from the petition," but concluded that Global's suit was predicated upon the proposition that the contract should have specified a method of containment, and that the Commission's failure to include such a provision rendered them liable for breach of contract. The Commission argued that Global could recover under a defective contract theory only if the missing provision was a design specification, and that any provision specifying a method of containment would have been a performance specification.

The trial court granted the Commission's motion for summary judgment, stating that

To find a submissible theory of liability, this Court would have to determine, in accordance with Global's theory of recovery, that [the Commission] *should have* had a detail design specification in the contract for dust containment and because it did not the contract was ambiguous.

The Court finds, however, that the contract was an unambiguous performance specification placing on Global the duty and cost to comply with the applicable Kansas City Ordinance and State Regulation which clearly informed Global the result it was to obtain regarding fugitive particulate matter generated by its sandblasting. (Emphasis in the original.)

Therefore, the trial court concluded, "Global cannot recover on its defective containment specification theory of liability."

The trial court's decision was correct in its analysis of the defective specification theory of liability; however, this was not the only theory of liability contained in Global's petition. While not a model of clarity (as the Commission observed in its motion for summary judgment), Global's petition does contain another theory of liability, which can best be explained by the following summary of public contract law principles.

■ According to generally accepted rules of public contract law, a contractor who has agreed to construct a public improvement for a stated price is entitled to additional compensation for expenses incurred by reason of the fact that the public officials in control of the work have insisted upon the contractor doing work not fairly embraced in the contract; however, the contractor is not entitled to additional compensation where it is shown that the contract actually contemplated his performing the work for which further remuneration is sought. 65 Am.Jur.2d, *Public Works and Contracts*, § 185 (1972). When the public or authorized officials direct performance of work which is, in fact, beyond contract requirements, the direction to perform such work has been defined in some jurisdictions as a breach of contract, and in other jurisdictions as a constructive change. Max E. Greenberg, *Problems Relating to Changes and Changed Conditions on Public Contracts*, 3 Pub. Cont. L.J. 135, 145 (1970).

■ Generally, there are three categories of constructive change/breach of contract by public officials. The first category is where the specifications are defective and, as a result, the contractor is required to perform extra work. The second category is where the public officials misinterpret the contract by erroneously rejecting work that conforms to the contract's requirements, or where the public officials require a higher standard of performance that is not within the terms of the contract. The third category is where the public officials deny the contractor a justifiable time extension, requiring the contractor to adhere to the original contract schedule to complete the contract. *See* Robert C. Gusman, *"Constructive Change"—A Theory Labeled Wrongly*, 6 Pub. Cont. L.J. 229, 232 (1974). *See also* 2 CDL § 14.3b.5c (1996).

Global's petition for damages can be construed to encompass the first two categories of the constructive change/breach of contract theory of liability. However, the Commission—which acknowledged in its motion for summary judgment that it had difficulty ascertaining Global's theory of liability—assumed that Global was proceeding solely under the first category of a defective contract theory, and advanced its successful summary judgment motion under that assumption.

And the trial court, in granting summary judgment on the ground that Global could not prevail on a defective specification theory as a matter of law, failed to acknowledge the second category of the constructive change/breach of contract theory of liability, which is also contained within the petition.

Global's sole point on appeal (which, like its petition, is not a model of clarity) essentially claims that the trial court erred in granting summary judgment because it ignored this second theory of liability, which involves a genuine issue of material fact. Specifically, Global claims there was a genuine issue of material fact as to whether Global was actually in compliance with the contract's containment standards, and whether the Commission therefore breached the contract by requiring Global to increase containment.

■ Under Rule 74.04(c)(3), a motion for summary judgment is to be granted if the "motion . . . and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A defendant may establish a right to summary judgment by showing facts that negate any element of the plaintiff's cause of action, or by showing that the plaintiff will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the essential elements of the plaintiff's case. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 381 (Mo. banc 1993).

■ Consistent with the broader definition of the constructive change/breach of contract theory of liability described in this opinion, the Missouri Supreme Court has held that a contractor working on a public improvement may not recover additional compensation for the expenditure of extra labor and materials when they are within the terms of the contract, even though the extra expenditures were caused by unforeseen difficulties. *American Contracting Co. v. Norton, Head & Denneen,* 253 S.W. 372, 376 (Mo.1923). Applying the principle of *American* to the situation in the case at bar, the key question becomes: Was the requirement of increased containment measures within the terms of the contract?

■ In its brief, Global makes the following arguments in support of its contention that the increased containment requirement was not within the terms of the contract: (1) the city ordinance's debris containment requirements do not determine the contract requirements because the city has no jurisdiction over a state highway project; (2) the city ordinance and state regulation, if incorporated into the contract, only call for "reasonable measures" to prevent the escape of airborne debris, which is satisfied by the 85% containment method originally employed by Global; (3) there was no evidence in the record—no admission, plea, finding of guilt, or conviction—that Global's initial containment measures violated any ordinance or regulation; (4) an 85% containment method was made a term of this contract by custom and usage under a prior contract, and by course of conduct under the present contract, and that term was exceeded by the Commission's requirement of increased containment methods.

We need not address Global's contention that a municipal ordinance does not have effect when applied to a project under the jurisdiction of the Commission. Global did not raise this issue in response to the Commission's motion for summary judgment, and Global is therefore precluded from making this argument on appeal. *D.E. Properties v. Food for Less,* 859 S.W.2d 197, 201 (Mo.App. E.D.1993).

Global's claim that an 85% containment method was made a term of this contract by custom and usage under a prior contract is without merit. Global's "custom and usage" argument is based upon the use of an 85% containment method to paint a single bridge in an unpopulated industrial area, and an isolated instance or several instances do not establish custom or usage. *Smith v. Alaskan Fur Company,* 325 S.W.2d 740, 743 (Mo. 1959).

Global's remaining arguments can be disposed of by noting that the decision of the resident engineer was binding on the parties in this case. In this case, in order for the change to an increased containment method to be within the terms of the contract, Glob-

al's initial method must necessarily have fallen short of contract requirements. And, the question of whether Global provided services of a quality required by the terms of the contract was an issue which, according to the contract, was to be decided by the engineer. Section 105.1.1 of the contract provides:

> The engineer will decide all questions which may arise as to the quality, quantity, and acceptability of materials furnished and work performed and as to the rate of progress of the work; all questions which may arise as to the interpretation of the plans and specifications; all questions as to the acceptable fulfillment of the contract on the part of the contractor; all questions of classification; the proper compensation for the performance or breach of the contract; all claims of any character whatsoever in connection with or growing out of the construction whether claimed under the contract, under force account, under quantum meruit, or otherwise; and his estimates and decisions shall be final, binding, and conclusive upon all parties to the contract.

■ In Missouri, it is well settled that parties to a construction contract may agree that questions or disputes as to whether work has been performed in accordance with the contract shall be determined by an engineer, and even though the engineer is connected to one of the parties to the contract, his determinations are binding upon the parties in the absence of fraud, or such gross mistake as would imply bad faith on the part of the engineer, or where the engineer misconstrued the contract. *Public Water Sup. Dist. No. 8 v. Maryland Casualty Co.*, 478 S.W.2d 293, 295–96 (Mo.1972); *Massman Const. Co. v. Lake Lotawana Ass'n*, 240 Mo. App. 469, 210 S.W.2d 398, 402 (1948); *Sides Const. Co. v. Arcadia Valley R–II Sch. Dist.*, 565 S.W.2d 761, 772 (Mo.App. E.D.1978); *see also* 1 CDL § 4.8 (1996). In none of its pleadings did Global allege any facts tending to show that the Commission engineer was guilty of fraud, gross mistake, or any misconstruction of the contract (in its petition, Global alleged that the Commission required a higher standard of performance that was not within the terms of the contract, but not that the Commission engineer misinterpreted the contract).

The judgment of the trial court is affirmed.

All concur.