W. G. POLK v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—142 S. W. (2d) 1061.

Division Two, September 10, 1940.*

*Carl S. Hoffman* and *Montgomery, Martin & Montgomery* for appellant.

*NOTE: Opinion filed at May Term, 1940, July 3, 1940; motion for rehearing filed; motion overruled at September Term, 1940, September 10, 1940.

794

*Clarence C. Chilcott, Payne H. Ratner, Crouch & Crouch* and *Will H. Hargus* for respondent.

BOHLING, C.—W. G. Polk instituted an action for malicious prosecution against the Missouri-Kansas-Texas Railroad Company, a corporation, and recovered a judgment of $15,000. This is defendant's second appeal. As a sufficiently detailed statement for general purposes may be found in the opinion on first appeal (consult 341 Mo. 1. c. 1217-1219, 111 S. W. (2d) 1. c. 139-141), we mention only such facts as we deem necessary for the disposition of this review, which turns on the admissibility of certain evidence.

Merchandise had been taken from one of defendant's cars in its Parsons, Kansas, switchyard on several occasions. Defendant's special agents watched the cars and plaintiff, employed as an extra switchman by defendant, was arrested on the night of August 13, 1933, and charged with the offense of burglary under the Kansas statutes. After being bound over to the District Court, the Prose-

cuting Attorney refused to prosecute and plaintiff was discharged, this entry appearing of record as of February 22, 1934.

Plaintiff testified that the latter part of October or the first part of November, 1933, the County Attorney told him the case was to be dismissed; that he desired to resume his work with defendant; that he informed his superintendent, Mr. Little, he could convince him, if afforded an opportunity on a night when the conditions were the same; it was impossible for defendant's special agents to have seen what they testified to at the preliminary hearing; that Mr. Little said he would be glad to help plaintiff; that he thought Mr. Little asked him if he wanted an investigation under the "switchmen's agreement;" that he did not care to have such an investigation; that Mr. Little agreed to investigate the matter with plaintiff; that Mr. Little and plaintiff, accompanied by others, made an investigation on or about the night of November 30, 1933; that said night was a moonlight night whereas the night of August 13th was a clear, dark night and the conditions with respect to visibility were not similar; that Mr. Little informed him they would arrange to make another investigation later; and that plaintiff never asked him to go back again—"that was the end, the next morning there was no other chance, no other opportunity to ask him." The quoted testimony referred to the fact that plaintiff received a service letter, dated December 1, 1933, notifying him of his dismissal from service. This notification was over the signature of Superintendent Little, and, after stating plaintiff had been employed as a "switchman" from May 31, 1920, to August 14, 1933, read: "Cause of leaving—Dismissed from service account it having been reported to the undersigned that he was seen entering and leaving car containing merchandise at night without lighted lantern while the car containing merchandise was located in a more or less secluded spot."

Defendant says the admission of this letter in evidence was error, and cites the three cases next mentioned. They hold testimony raising extraneous and collateral issues having no bearing on the factual issues in controversy inadmissible; as follows: In Ellis v. Metropolitan St. Ry. Co., 234 Mo. 657, 685(e), 138 S. W. 23, 32[23], a tort action based on negligence, testimony of defendant's custom to investigate such claims and upon determination as to fault to adjust cases wherein defendant was at fault and decline to adjust others. In Cantwell v. Johnson, 236 Mo. 575, 595(2), 139 S. W. 365, 372[1], a proceeding in equity seeking relief by way of an injunction, accounting and redemption of certain personal property, testimony covering "gone-by transactions" not germane to the subject-matter of the suit. In Ritter v. First Natl. Bk., 87 Mo. 574, 575, an action for a deposit with defendant, testimony that a witness accompanied plaintiff to town and to defendant bank on a given date.

Plaintiff says if the service letter was competent for any purpose its admission was not error (Moore v. St. Joseph & G. I. Ry. Co.,

268 Mo. 31, 36(IV), 186 S. W. 1035, 1037[5]; Cazzel v. Schofield, 319 Mo. 1169, 1192(VI), 8 S. W. (2d) 580, 590[10]), and contends it was admissible for a number of reasons.

■ Malice is of the gist of an action for malicious prosecution. [Vansickle v. Brown, 68 Mo., 627, 637[9]; Waddell v. Krause, 210 Mo. App. 117, 127, 241 S. W. 964, 966[5]; Finley v. St. Louis Refrig. & W. G. Co., 99 Mo. 559, 563(II), 13 S. W. 87, 88(2).] Missouri opinions ruling malicious prosecution actions contain statements to the effect that subsequent declarations of a defendant may be received in evidence to show his previous *animus* against the plaintiff and to characterize the motive with which the act was done. [Kennedy v. Holladay, 25 Mo. App. 503, 512(III); Christian v. Hanna, 58 Mo. App. 37, 47; Scovill v. Glasner, 79 Mo. 449, 456(III).] Courts are rather liberal with respect to the variety of evidence permitted on the issue of malice. [Consult Irons v. American Ry. Ex. Co., 318 Mo. 318, 336(VI), 300 S. W. 283, 291(14; 15), and Stubbs v. Mulholland, 168 Mo. 47, 74, 75, 82, 67 S. W. 650, 658(2).]

The defendant's mental incentive was not a constitutive element of plaintiff's cause of action in any of the instant defendant's cited authorities and, under the presentation in defendant's brief and argument, the point is ruled against defendant.

■ The litigant's agree that an important factual issue involved in the prosecution of the charge against plaintiff was the ability of defendant's special agents to have seen the movements of plaintiff on the night of August 13, 1933. Six witnesses testified that they went to defendant's switchyard in Parsons between 1:30 and 2:00 A. M. to make experiments with respect to the ability of one to observe the movements of plaintiff as testified to by defendant's special agents, and that they were ordered from the premises and prevented from making the desired observations. This occurred about the middle of October, 1933, prior to plaintiff receiving information that the charges pending against him would be dismissed. Defendant complains of the admission of this testimony over objection and motion to strike. Plaintiff says it is proper to show malice and an attempt on the part of defendant to suppress evidence material to plaintiff's defense on the charge preferred against him by defendant.

Defendant makes no issue of plaintiff's contentions, viz.: that the result of experiments conducted under similar circumstances are admissible in evidence (Griggs v. Kansas City Rys. Co. (Mo.), 228 S. W. 508, 511[6]; or that a litigant's failure to produce evidence under his control gives rise to an inference that such evidence, if produced, would be unfavorable (22 C. J., p. 111, sec. 53); or a party's attempt to suppress evidence may be construed as an indication of his consciousness that his case or defense is lacking merit (22 C. J., p. 124, sec. 60; 1 Jones Commentaries on Evidence (2 Ed.), sec. 83; p. 144, sec. 84); or that if the defendant "wrongfully deprived the plaintiff of his

means of exculpation, and then prosecuted him criminally, it would be on its face a malicious act'' (quoting Fagan v. Knox, 8 Jones & Spencer (New York Superior Court) 41, 50; Same, 66 N. Y. 525, 529, 530). [See also: Rice v. Jefferson City B. & T. Co. (Mo.), 216 S. W. 746, 752[8]; Beckman v. Raines, 210 Mo. App. 253, 259, 243 S. W. 192, 193[2]; Wall v. Lemons, 227 Mo. App. 246, 255, 51 S. W. (2d) 194, 198[5]; Powell v. Union Pac. Rd. Co., 255 Mo. 420, 447, 164 S. W. 628, 636[9].]

In fact, defendant mentions State ex rel. American Mfg. Co. v. Anderson (Banc), 270 Mo. 533, 546, 194 S. W. 268, 271[5], holding Missouri circuit courts ''have inherent power to make *reasonable* orders requiring a litigant to submit his premises to the inspection of his adversary, where necessary to do justice between the parties in a master and servant personal injury case.'' Quoted from State ex rel. Schlueter Mfg. Co. v. Beck (Banc), 337 Mo. 839, 846, 85 S. W. (2d) 1026, 1029, an opinion destined, the writer believes, to become a landmark of jurisprudence on the issue. Thus, defendant concedes plaintiff had a right of access to defendant's premises to make experiments, and we are not concerned with any general right of plaintiff to, or, by way of analogy, the propriety of a court order, had such an order been issued, authorizing plaintiff to inspect defendant's premises and conduct thereon experiments for plaintiff's purposes. State v. Howland, 100 Kan. 181, 184, 163 Pac. 1071, 1072[3], while not ruling the precise issue here, indicates that had the Kansas courts considered an inspection of defendant's switchyard and the conducting of experiments therein necessary to the proper preparation of Polk's defense on the charge against him, a refusal to permit the same would have caused a conviction to be set aside upon review on the ground a fair trial had not occurred.

Plaintiff's right to enter upon defendant's premises rests wholly upon private arrangements made by his counsel Ratner. Mr. Ratner testified that he applied to someone; that they ''told me it would be all right;'' that ''I supposed it would be all right.'' Witness could not conceive of any possible objection on defendant's part. He gave no factual testimony from which a jury could determine whether he, in fact, had been authorized to enter upon defendant's premises, or if the party who told him it would be all right was authorized to grant permission. It is evident from his testimony he desired to make the observations when the moon would be at a position corresponding to that on the night plaintiff was arrested, but he gave no testimony that a particular night had been agreed upon between him and the party to whom he referred.

Defendant's testimony does not sufficiently aid plaintiff. Superintendent Little testified that after business hours on the evening of October 11, 1933, Mr. Ratner telephoned him at his home and, after they had discussed another matter, Mr. Ratner mentioned he wanted

to take a party to make some observations in defendant's yards. The witness informed him he would make inquiry of the defendant's legal department and if it was all right with them it was all right with witness; that the next morning he conferred with the legal department and then made arrangements with the day yardmaster to furnish safe conduct to Mr. Ratner and his party; that about 8 :00 that evening, while he was engaged in other matters, he received a telephone call from Mr. Ratner's secretary informing him Mr. Ratner desired to make the observations at 2 :00 A. M. that night; that he immediately informed the secretary he had made no arrangements for anyone to safely conduct Mr. Ratner's party through the yards that night and for her to inform Mr. Ratner not to go that night but that he would make arrangements for the next night or any other night.

Neither Mr. Ratner nor plaintiff made further inquiry concerning the occurrence or sought an explanation of defendant's actions or a second attempt to make observations. Thereafter, plaintiff requested and secured a personal investigation by Superintendent Little, at which plaintiff was present, and the record discloses no reference in connection therewith to any previous attempt to make observations. Plaintiff's testimony indicates that Superintendent Little promptly complied with all requests made by plaintiff personally for investigation.

The burden of proof and the burden of evidence rested in the beginning upon plaintiff. For instance and by way of analogy: ''The burden rests on the party who offers a declaration as part of the *res gestae* to show that it was in fact spontaneous . . .'' [22 C. J., p. 462, sec. 550; Sconce v. Jones, 343 Mo. 362, 371, 121 S. W. (2d) 777, 781[5]; Woods v. Southern Rd. Co. (Mo.), 73 S. W. (2d) 373, 377[2]; Aetna Life Ins. Co. v. Kern-Bauer, 62 Fed. (2d) 477.]

■ Plaintiff's evidence does not remove from speculation and conjecture any wrongful action on the part of defendant in the occurrence, and defendant's evidence discloses a willingness on the part of defendant to reasonably cooperate with plaintiff in granting plaintiff access to its switchyard for experiments therein. That plaintiff has a suit pending against defendant does not give plaintiff carte blanche authority to make experiments upon defendant's premises. To hold a plaintiff has such rights willy-nilly would unreasonably place defendants at the mercy of plaintiffs on the issue of malice *vel non* in many actions of this nature. An extensive and active railroad switchyard is involved. Any privilege of plaintiff to make observations therein imposed a corresponding obligation to respect the reasonable rights of defendant in its property. Plaintiff testified there were seven in the Ratner party, three of whom were minors, one twelve years of age, and all, save one, inexperienced in railroad switching work. The record indicates their unrestricted and unprotected movement about defendant's said switchyard at 2 :00 A. M. would have interfered with

defendant's transaction of its business and subjected said parties to the danger of injury and defendant to lawsuits in the event of an injury. There is no evidence of probative value that Mr. Ratner's unescorted party of seven was authorized to enter upon defendant's premises. A court in authorizing plaintiff to make experiments in said yard would have given consideration to defendant's as well as plaintiff's rights; and defendant, if there existed a legal obligation in the absence of a court order, was likewise entitled to an opportunity to and to reasonably protect its own interest in passing upon or granting a like personal request on behalf of plaintiff. In the circumstances, the admission of this evidence, repeated in substance by six witnesses and receiving the repeated sanction of the court through the overruling of defendant's objections, gave plaintiff an unfair and prejudicial advantage and was reversible error.

The judgment is reversed and the cause is remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.