Jimmie L. BROCKMAN, Appellant,

v.

REGENCY FINANCIAL CORP., Respondent.

No. WD 61850.

Missouri Court of Appeals, Western District.

Jan. 20, 2004.

Dale K. Irwin, Kansas City, MO, for appellant.

Charles E. Weedman, Jr., Harrisonville, MO, for respondent.

Before BRECKENRIDGE, P.J., and EDWIN H. SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Jimmie Brockman appeals from the trial court's grant of a judgment notwithstanding the verdict to Regency Financial Corporation that set aside the jury's $30,000 punitive damages award in his favor. Brockman argues the trial court erred in granting a JNOV to Regency, because the evidence was sufficient to justify punitive damages, in that it showed Regency's evil motive or reckless disregard for the rights of others. We find that Brockman introduced sufficient evidence to support the jury's award of punitive damages on his claim for malicious prosecution. We reverse the JNOV in Regency's favor and remand for entry of judgment in Brockman's favor in the amount of $30,000 as punitive damages.

## Background

Viewing the evidence in the light most favorable to Brockman, the following evidence was adduced at trial. Tom Moore created Regency and Neal Erisman created The Finance Plaza, Inc., at the same time. Moore and Erisman are both officers and directors of each corporation. Regency and Finance Plaza share the same premises and employees, including Margaret Raab, their title clerk. Regency and Finance Plaza sell and finance cars to people with substandard credit.

Finance Plaza typically sells 150 to 160 cars a month, 90 of which are Regency repossessions. After Finance Plaza sells a car, it assigns the customer's contract to Regency. If Regency repossesses a car, it sells the car back to Finance Plaza in the vast majority of cases. Finance Plaza does not re-purchase the contract from Regency. Upon turning the car over to Finance Plaza, Regency gets the customer's original file. After evaluating the file, Regency decides whether to sue the customer for a deficiency. Steven Coffin, Regency's in-house collection lawyer, files an average of 20 to 25 lawsuits a month. Regency collects $700,000 to $800,000 per month in car payments and $20,000 to $30,000 per month from garnishment of wages. The majority of Regency's deficiency judgments are by default.

On February 24, 2000, Brockman signed a contract to purchase a 1993 Pontiac from

Finance Plaza. He took possession of the car after making a down payment of $100 and paying a $20 dealer fee. When Brockman asked for title to the vehicle, the employee handling the paperwork told him it would be mailed to him "later."

After reviewing the paperwork to determine where to send his car payments, Brockman decided he had paid too much for the Pontiac. He resolved to return the car. Brockman went to Regency and spoke with a manager. He told the manager he had decided to return the car because he had overpaid. At first, the manager told him he could not return the car. When Brockman informed her that he had never received title to the car, she said that if he would return the paperwork and sign a form, he would not owe anything on the car and would be free of the deal. Brockman returned the paperwork, signed the form, gave the manager the car keys, and left.

Brockman heard nothing more from Regency until it served him with a deficiency lawsuit at his place of work. Regency alleged that: Finance Plaza and Brockman had contracted for the sale and purchase of the Pontiac on February 24, 2000; Finance Plaza had assigned the contract to Regency; Brockman had defaulted on the contract and surrendered the vehicle; and Regency had subsequently sold the vehicle.

On May 9, 2002, the jury returned a verdict in Brockman's favor on the malicious prosecution claim and awarded him $1,000 in actual damages and $30,000 in punitive damages. The trial court entered judgment accordingly. Regency filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on punitive damages on June 10, 2002. On August 23, 2002, the trial court granted Regency's motion for judgment notwithstanding the verdict and set aside the jury's punitive damages award. This appeal follows.

## Standard of Review

Brockman challenges the trial court's grant of a judgment notwithstanding the verdict to Regency that set aside the jury's $30,000 punitive damages award. Regency did not appeal the award of actual damages. We will affirm the trial court's grant of JNOV only if we find that Brockman failed to make a submissible case on punitive damages. *Envtl. Prot., Inspection, & Consulting, Inc. v. City of Kansas City, Missouri*, 37 S.W.3d 360, 369 (Mo. App. W.D.2000). Whether Brockman presented a submissible case is a question of law; therefore, our review is *de novo. Id.* In order to make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. *Id.* In determining whether Brockman made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to Brockman and disregard all unfavorable evidence and inferences. *Kinetic Energy Dev. Corp. v. Trigen Energy Corp.*, 22 S.W.3d 691, 697 (Mo. App. W.D.1999). "A presumption exists favoring the reversal of a JNOV." *Id.* This court will not overturn a jury verdict unless there is a complete absence of probative facts to support it and reasonable minds could not differ as to the question before the jury. *Echard v. Barnes–Jewish Hosp.*, 98 S.W.3d 558, 565 (Mo.App. E.D. 2002).

## Argument

In his sole point on appeal, Brockman argues the trial court erred in granting Regency's motion for JNOV, because the evidence was sufficient to justify punitive damages, in that the evidence showed Regency's evil motive or reckless disregard for the rights of others. In order to

establish liability in a malicious prosecution claim, a plaintiff must plead and prove six elements: "(1) commencement of an earlier suit against plaintiff; (2) instigation of the suit by defendant; (3) termination of the suit in plaintiff's favor; (4) lack of probable cause for the suit; (5) malice by defendant in instituting the suit; and (6) damage to plaintiff resulting from the suit." *Fust v. Francois*, 913 S.W.2d 38, 43–44 (Mo.App. E.D.1995). As we will discuss below, a higher degree of evidence is required to award punitive damages. Because the finding of liability for malicious prosecution was not appealed, we need not analyze whether the six elements were satisfied. Review of the probable cause element, however, is helpful as background for our discussion of the punitive damages issue.

## A. Probable Cause

▉▉▉ Probable cause for initiating a civil suit means, "a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law." *Id.* at 44. Parties who file suits are held responsible for the facts known to them at the time of the filing and for all other facts ascertainable through due diligence. *Id.* at 45. Proving lack of probable cause involves proving a negative, so the slightest amount of proof is all that is necessary to make a prima facie case. *Id.* at 44.

Regency claims Brockman did not prove it acted without reasonable grounds in filing its breach of contract suit. Brockman alleged that Regency's breach of contract suit was not justified because, under section 301.210.4, RSMo 2000, when Finance Plaza failed to assign title to Brockman upon delivery of the car, the sales contract was fraudulent and void. If Missouri law applies, the sales contract was void for lack of assignment of title to Brockman at the time of delivery.

Regency argues that Kansas law, not Missouri law, applies to the assignment of title issue. K.S.A. 8–135(c)(6), at the time, provided:

> In the event of a sale or transfer of ownership of a vehicle for which a certificate of title has been issued, which certificate of title is in the possession of the transferor at the time of delivery of the vehicle, the holder of such certificate of title shall endorse on the same an assignment thereof, with warranty of title in a form prescribed by the division and printed thereon and the transferor shall deliver the same to the buyer at the time of delivery to the buyer of the vehicle or *at a time agreed upon by the parties, not to exceed 30 days, inclusive of weekends and holidays, after the time of delivery. The agreement of the parties shall be executed on a form provided by the division.* The requirements of this paragraph concerning delivery of an assigned title are satisfied if the transferor mails to the transferee by restricted mail the assigned certificate of title within the 30 days[.] (Emphasis added.)

The record does not contain any evidence that Finance Plaza and Brockman reached an agreement that title would be assigned at a time other than delivery of the vehicle, but within thirty days of delivery, or that they executed this agreement on a form provided by the Division of Motor Vehicles of the Kansas Department of Revenue, as required by the statute.[1] Brockman testi-

---

1. The provisions of K.S.A. 8–135(c) have been strictly enforced to promote the purposes of the Motor Vehicle Registration Act; there is no provision in the statute or in the case law

fied that when he asked about title, the woman completing his paperwork told him the title would be delivered to him "later." They never discussed and agreed upon a date for assignment within thirty days. Brockman never signed a form to that effect.

K.S.A. 8–135(c)(7) mandated:

It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered, unless, at the time of delivery thereof *or at a time agreed upon by the parties,* not to exceed 30 days, inclusive of weekends and holidays, after the time of delivery, there shall pass between the parties a certificate of title with an assignment thereof. The sale of a vehicle required to be registered under the laws of this state, without assignment of the certificate of title, is fraudulent and void, *unless the parties shall agree* that the certificate of title with assignment thereof shall pass between them at a time other than the time of delivery, *but within 30 days thereof.* (Emphasis added.)

It appears from the record that Brockman and Finance Plaza never agreed to a date for transfer of title within thirty days of delivery in the manner prescribed by statute. An employee telling Brockman that the title would be mailed "later" does not suffice. Because Brockman and Finance Plaza never properly reached an agreement as to the date for transfer of title, Finance Plaza should have assigned title to Brockman upon delivery of the vehicle. Even if the parties did reach such an agreement on the approved form, evidence of which Regency has not produced, Brockman demonstrated that Finance Plaza never assigned title to him, let alone within thirty days of delivery of the vehi-

cle. The voluntary surrender of the car by Brockman makes no difference. There was never a valid sale.

■ Whether Missouri or Kansas law applies, the sales contract between Brockman and Finance Plaza, as assigned to Regency, was void for failure to assign certificate of title. At the time of filing suit, Regency knew or should have known that the sale to Brockman was invalid. Regency had no probable cause to pursue a breach of contract claim against Brockman based on a void sale.

## B. Malice

■ In order to prevail in an action for malicious prosecution, a plaintiff must prove that the defendant acted with malice in instituting suit. *Fust,* 913 S.W.2d at 43–44. In establishing liability in a civil malicious prosecution case, to make a prima facie showing of malice, a plaintiff must show "malice in law," "which rests upon a legal presumption independent of any proof [of] . . . mental state." *Pernoud v. Martin,* 891 S.W.2d 528, 535 (Mo.App. E.D.1995). A higher degree of malice is required, however, to justify punitive damages than to establish liability. In order to submit a punitive damage instruction, the plaintiff must demonstrate "legal malice," "which requires proving a culpable mental state." *Fust,* 913 S.W.2d at 50. The plaintiff must adduce evidence from which the jury could infer defendant acted with an improper or wrongful motive. *Id.*

Brockman submitted a claim for punitive damages on Instruction No. 7, modeled after M.A.I. 10.01, which read:

If you find the issues in favor of plaintiff, and if you believe the conduct of defendant as submitted in Instruction

interpreting it for "substantial compliance." *Perry v. Goff Motors, Inc.,* 12 Kan.App.2d 139,

736 P.2d 949, 953 (1987).

Number 5 was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then, in addition to any damages ..., you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

Regency does not challenge the level of malice required to assess punitive damages as outlined in the above instruction. It argues Brockman did not introduce proof sufficient to demonstrate that level of malice, or "legal malice."

Brockman introduced two types of evidence to prove malice: (1) evidence of Regency's conduct toward him and (2) evidence of Regency's conduct toward others. We will address the second type of evidence later in this opinion. First, we examine the evidence of Regency's conduct toward Brockman.

## I. Regency's Conduct Toward Brockman

■ After discovering he had made what he considered to be a bad deal on the Pontiac, Brockman returned the vehicle. He spoke with an office manager at Regency. Brockman testified that when he told the office manager he had never received title to the vehicle, she agreed that if he returned the paperwork and signed a form, he would be clear of the deal. Nevertheless, on June 20, 2000, Regency sued Brockman for a deficiency on the sales contract.

Regency served its lawsuit on Brockman at his place of employment. It attached an extra-judicial threat of garnishment in a notice with the heading "**Immediate Response Required**" to the summons. The attachment is included with all its lawsuits. The notice warns that Regency will soon provide a court with evidence of non-pay-ment of the account, the court *will issue* a judgment, and the judgment *will result* in a garnishment. (Emphasis added.) It informs the defendant that outstanding balances, judgments, and garnishment are binding for ten years, that they will follow a person to new jobs and new addresses, and that collection agencies can obtain this information. In the notice, Regency expresses its desire to "eliminate the need to go to court, plus save ... much trouble, by setting aside this garnishment." Under the heading is the statement, "PLEASE READ THIS LETTER IMMEDIATELY AND PHONE JUDY FARRENTINO AT (816) 941–0212." When Brockman immediately responded to the notice by calling Regency to talk about the lawsuit, a man got on the phone and told him he would look into the paperwork and get back to him. Brockman never heard from Regency.

On his court date, Brockman appeared without an attorney. When the judge asked Brockman, in the presence of Regency's attorney, if he owed Regency money, Brockman said he did not. The judge instructed Brockman to retain an attorney and continued the case. Brockman had not retained an attorney by the next court date, so the judge continued the matter again, after having Brockman speak with Regency's attorney. Brockman finally hired an attorney who filed an answer and counterclaim, accompanied by a summary judgment motion, on November 7, 2000. Brockman attached to his summary judgment motion a certified title history for the vehicle showing that he never received title. Regency dismissed its lawsuit without prejudice two months later on January 9, 2001.

Brockman's case against Regency proceeded to trial on May 7, 2002. At trial, Coffin testified that he never checked to see if the people he sued on behalf of

Regency had received title to their cars or if Regency had obtained repossession titles to cars before reselling them to Finance Plaza. Instead, he relied on the "very competent" title clerk employed by Finance Plaza and Regency. Coffin sued Brockman based upon the information in a "workup sheet." When asked why Brockman had not received title to the vehicle within thirty days of sale, Coffin responded:

> All I know is when I was instructed by Regency to prepare these lawsuits, if it was a Kansas title I was not to be concerned with delivery of title and I have never been, only until you filed your counterclaim in this particular case was I concerned with the title delivery issue.

## II. Regency's Conduct Toward Others

At trial, the judge admitted into evidence certain transactions between Finance Plaza, Regency, and other purchasers of vehicles. On appeal, Regency contends the court erred in admitting this evidence. Brockman argues Regency cannot challenge the admission of the evidence because it did not file a cross-appeal. Regency did not need to file a cross-appeal to challenge the admissibility of the evidence. A respondent may attack the erroneous rulings of the trial court in order to sustain a judgment in its favor. *Cascio v. Garrett*, 535 S.W.2d 272, 274 (Mo.App. 1976). And, ultimately, Regency was not aggrieved by the trial court's admission of the evidence because of the JNOV in its favor. It would not appeal from this favorable result. In such situations, we will review and determine the issue in the interest of justice. *Kennedy v. Dixon*, 439 S.W.2d 173, 180 (Mo. banc 1969).

We now turn to the evidence that Regency claims the trial court erred in admitting. Brockman offered the following evidence of four other deficiency lawsuits instituted by Regency against people who had purchased vehicles from Finance Plaza. Regency filed suit against Jeffrey Ricks after Regency repossessed his vehicle and sold it. Regency did not obtain a repossession title to the car before selling it. On March 8, 2000, Willie Grayson, a Missouri resident, purchased a 1995 Ford from Finance Plaza that was titled in Missouri. Regency sued Grayson for a deficiency despite the fact that it never assigned title to Grayson. Stephan Merrill, another Missouri resident, purchased a Buick titled in Missouri from Finance Plaza on February 26, 2000. Again, Regency sued Merrill even though he never received title to the Buick. Finally, Brockman introduced evidence of a deficiency suit filed against Troy and Angela Johnson. Regency repossessed and sold a 1990 Ford the Johnsons had purchased from Finance Plaza without first obtaining a repossession title.

Regency objected to the admission of this evidence at trial. The court admitted the evidence over these objections. Regency claims the other lawsuits are dissimilar from the Brockman lawsuit and, therefore, irrelevant. Regency points out, and the trial court seemed to find this fact very significant, that in the other four suits Regency obtained default judgments against the defendants, as opposed to this case where Brockman challenged Regency and was awarded summary judgment.

Missouri courts "are rather liberal with respect to the variety of evidence permitted on the issue of malice." *Polk v. Missouri–Kansas–Texas R.R. Co.*, 346 Mo. 793, 142 S.W.2d 1061, 1062 (1940). Generally, evidence of transactions not connected with those involved in the case at issue is not admissible, but under certain circumstances the law recognizes an exception.

*Rice v. Lammers,* 65 S.W.2d 151, 154 (Mo. App.1933). *Rice* involved allegations of fraud. The court allowed the admission of evidence of a salesman's representations and past dealings with customers other than the party involved in the suit. With allegations of fraud, intent becomes the gist of the inquiry and "the evidence should be allowed to take a wide range." *Rice,* 65 S.W.2d at 154.

We disagree with Regency that the exception to the general prohibition against evidence of other transactions should be limited to actions for fraud. "Evidence of past action by an individual or group of individuals is relevant as bearing upon the intent with which they later perform a similar act." *Russell v. Frank,* 348 Mo. 533, 154 S.W.2d 63, 66 (1941). In order to submit punitive damages on his malicious prosecution claim, Brockman had to show legal malice by Regency, which required proving a culpable mental state. When intent or mental culpability must be proven, a party's actions toward others tending to demonstrate the intent with which the party may have acted in the present case become relevant. "[E]vidence of other acts of defendant are admissible if those acts are sufficiently connected with the wrongful acts that they may tend to show defendant's disposition, intention, or motive in the commission of the acts for which [punitive] damages are claimed." *Boyer v. Grandview Manor Care Ctr., Inc.,* 759 S.W.2d 230, 234 (Mo. App. W.D.1988).

We find the actions of Regency in suing Ricks, Grayson, Merrill, and the Johnsons are sufficiently similar with Regency's pursuit of a deficiency action against Brockman to show improper motive on the part of Regency in suing Brockman. We find sufficient similarity even though Regency obtained default judgments in the other four actions and the parties involved in the other actions were not all Kansas residents, like Brockman. In all of the lawsuits, Regency proceeded against the defendants despite titling irregularities of which it was or should have been aware. This shows a pattern of and is relevant in proving a culpable mental state. In its opening, Regency argued that if Coffin had known Brockman "had signed a release and just kind of voluntarily brought the car back," he would not have pursued the deficiency action against Brockman. Regency further argued that Coffin did not know Finance Plaza never delivered title to Brockman. The evidence of other lawsuits supports the conclusion that Regency did not simply make an isolated mistake in suing Brockman, as it has suggested. As such, the other transactions also reflect on credibility.

We have determined that the trial court did not err in admitting the evidence of the four other lawsuits. Regency's conduct in suing the other parties, even though problems with the delivery of title or procurement of repossession title existed, is sufficiently similar to its conduct toward Brockman to warrant the admission of the evidence to prove Regency's mental culpability. The evidence of Regency's pursuit of lawsuits without concern for the validity of the underlying sales tends to show an absence of mistake and a pattern of conduct.

### Conclusion

Viewed in the light most favorable to Brockman, giving him the benefit of all reasonable inferences, the evidence was sufficient to support the submission of a claim for punitive damages. Regency's conduct, as outlined throughout this opinion, supports the conclusion that Regency filed suit upon void obligations accompanied by a notice that misstated facts and/or the law with the intent to intimidate the

defendant into paying a debt on a void sale, all with the requisite culpable mental state. The trial court, therefore, erred in granting Regency's motion for a judgment notwithstanding the verdict and overturning the jury's award of punitive damages. We reverse the JNOV in Regency's favor and remand with directions to reinstate the verdict in Brockman's favor in the amount of $30,000 as punitive damages.

BRECKENRIDGE, P.J., and SMITH, J., concur.